\*\* E-filed September 8, 2010 \*\*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PETER BECKUM,<br><br>    Plaintiff,<br><br>  v.<br><br>CITY OF EAST PALO ALTO; CHIEF OF POLICE RONALD L. DAVIS; and OFFICER EDWARD SOARES, individually and in his personal capacity and his official capacity as a police officer for the City of East Palo Alto,<br><br>    Defendants.<br>_____/ | No. C09-03301 HRL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: Docket No. 26] |

This is a 42 U.S.C. § 1983 action arising out of plaintiff Peter Beckum's ("Beckum") arrest by East Palo Alto police officer Edward Soares ("Officer Soares"). As explained below, the Court grants in part and denies in part the defendants' motion for summary judgment.[1]

**BACKGROUND**

On July 20, 2010, East Palo Alto police officers visited a barbershop, where Beckum worked as a barber, because narcotics are frequently sold in the area. When Officer Soares approached the barbershop, he reportedly saw a man in a red, white, and black shirt get up from a chair and run to the bathroom in the back of the barbershop. As Officer Soares got to the front door of the

---
[1] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, all parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.

barbershop, he asked Beckum, who was in the barbershop, where the man who just "ran" past him went. Beckum responded that no one "ran" past him, so Officer Soares arrested Beckum for delaying and obstructing police officers in their duties pursuant to California Penal Code § 148(a). Beckum claims that Officer Soares "manhandled" him during the arrest and was not read *Miranda* warnings. Beckum was handcuffed and made to wait for 30-40 minutes, after which he was cited at the scene. (Beckum's citation was ultimately dismissed.)

The man in the red, white, and black shirt turned out to be Beckum's nephew, Lerone White. When he emerged from the bathroom, he was cleaning his hands with a paper napkin. Officer Soares then searched the bathroom and found two plastic bags containing "cocaine base." White was arrested and later confessed that he hid the "cocaine base" in the bathroom and had intended to sell it for $1,700.

Beckum filed suit under 42 U.S.C. § 1983 against Officer Soares, Chief of Police Ronald Davis ("Davis"), and the City of East Palo Alto ("East Palo Alto") (collectively, "Defendants"), alleging that his constitutional rights were violated. He also alleged state law claims.

Defendants filed a motion for summary judgment. Beckum's opposition was eight days late and neither he nor his counsel appeared at oral argument.[2]

## **LEGAL STANDARD**

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)(2)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough

---

[2] In their reply and citing to this District's local rules, Defendants argue that the Court should grant their motion outright because Beckum failed to timely file an opposition to Defendants' motion for summary judgment. (Docket No. 35 ("Reply") at 2.) But as a leading treatise explains, "[a] right to judgment as a matter of law is not established simply because the opposing party fails to respond in time. The movant may not be entitled to summary judgment on certain occasions no matter how poor the opponent's response." 11 MOORE'S FED. PRAC. § 56.10[3] (Matthew Bender 3d ed. 2010).

2

evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *See* FED. R. CIV. P. 56(e)(2); *Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See id.* A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248-49.

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 325). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. *Id.*

## DISCUSSION

A. <u>Whether Officer Soares Had Probable Cause to Arrest Beckum</u>

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda County*, 811 F.2d 1243, 1245 (9th Cir. 1987). Beckum first claims that his arrest violated his Fourth Amendment rights because it was unsupported by probable case.

The Fourth Amendment protects persons against "unreasonable searches and seizures." U.S. CONST. amend. IV. A warrantless misdemeanor arrest is "reasonable," and thus constitutional, if it is based on probable cause. *Atwater v. City of Lago Vista,* 532 U.S. 318, 354 (2001); *Barry v. Fowler,* 902 F.2d 770, 772 (9th Cir. 1990). Probable cause exists where an officer has "knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed." *United States v. Lopez,* 482 F.3d 1067, 1072 (9th Cir. 2007). A probable cause determination is based on "the totality of the circumstances known to

3

1  the officers at the time," *United States v. Alaimalo,* 313 F.3d 1188, 1193 (9th Cir. 2002) (internal
2  quotation marks omitted), and is to be determined on a purely objective basis, *Devenpeck v. Alford,*
3  543 U.S. 146, 153 (2004).

4       Officer Soares arrested Beckum for a misdemeanor violation of California Penal Code §
5  148(a)(1) for "willfully resist[ing], delay[ing], or obstruct[ing] any . . . peace officer . . . in the
6  discharge or attempt[ed] discharge [of] any duty of his or her office or employment . . . ." Officer
7  Soares states that as he approached the barbershop, he saw a person in a red, white, and black shirt,
8  later identified as White, get up from his chair in the barbershop and run toward the back.[3] (Docket
9  No. 29, Ex. 1 ("Soares Police Report") at 4.) Officer Soares states that White "ran" directly past
10 Beckum on his way to the back of the barbershop. (*Id.*) So, after he entered the barbershop, Officer
11 Soares asked Beckum where White had gone as he just ran past him. (*Id.*) According to Officer
12 Soares, Beckum replied, "Nobody ran past here." (*Id.*) Officer Soares then asked Beckum why he
13 was "attempting to conceal the fact that White ran past him," to which Beckum responded, "I don't
14 know what your [sic] talking about." (*Id.* at 5.) Based on Beckum's response, Officer Soares
15 arrested Beckum for "obstructing/delaying/resisting" him in the course of his duties. (*Id.*)

16      Beckum version of the events is different. He testified during his deposition that White was
17 sitting in a chair near the front door of the barbershop when the police officers approached. (Docket
18 No. 28, Ex. 1 ("Beckum Depo.") at 31:23-32:5; 34:15-25.) As the police officers arrived — but
19 before White got up from his chair — Beckum said that another male individual came into the
20 barbershop from the parking lot, walked past him, and went into the bathroom for a couple of
21 minutes. (*Id.* at 37:15-38:14; 39:11-40:20; 41:23-42:4.) When this other individual came out of the
22 bathroom, White got up from the chair, walked past him, and went into the bathroom. (*Id.* at 37:15-
23 21; 42:5-43:8.) This other individual then walked past the police officers (who by this time were
24 near the front door) and out of the barbershop. (*Id.* at 37:15-38:14; 40:21-24; 41:15-17; 41:23-
25 42:4.) He says that neither White nor the other individual ever ran past him in the barbershop; they
26 "walked." (*Id.* at 51:4-11; 51:20-52:4.)

27

28 [3] In Supplement 1 to Soares's police report, Officer John Norden also states that he observed White get up from his chair and run to the back of the barbershop. (Soares Police Report at 9.)

4

"Where the facts or circumstances surrounding an individual's arrest are disputed, the existence of probable cause is a question for the jury." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008); *see also McKenzie v. Lamb,* 738 F.2d 1005, 1008 (9th Cir.1984) ("[I]n a § 1983 action the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury, and summary judgment is appropriate only if no reasonable jury could find that the officers did or did not have probable cause to arrest.") (internal citations omitted).

Here, the circumstances surrounding Beckum's arrest are disputed. At the summary judgment stage, Beckum's version of the facts and all reasonable inferences drawn therefrom, are taken as true. *Anderson*, 477 U.S. at 249. At trial, of course, a jury might conclude that Officer Soares had probable cause to arrest Beckum for a violation of California Penal Code § 148(a)(1). However, at this stage, it appears that a reasonable juror could find that Beckum was merely answering Officer Soares's question as accurately as he could. Accordingly, summary judgment shall be denied regarding Beckum's false imprisonment claim.

B. <u>Whether Officer Soares Used Excessive Force in Arresting Beckum</u>

Beckum also claims that his constitutional rights were violated because Officer Soares used excessive force enacting his arrest.

An excessive force claim against a law enforcement officer is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). Thus, a court must evaluate the facts and circumstances of each particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985).)

1    In their motion, Defendants argue that "[b]y Beckum's own account, Officer Soares simply
2 grabbed his arm, handcuffed him to effectuate his arrest, and seized him for a temporary period of
3 time." (Docket No. 26 ("Motion") at 9.) Beckum testified that Officer Soares called him over to the
4 front door of the barbershop (where Officer Soares was standing), and when he got there, Officer
5 Soares "just grabbed me and said I'm going to jail." (Beckum Depo. at 50:2-16.) When asked how
6 Officer Soares grabbed him, Beckum said that he "grabbed me by my arm and pulled it up, trying to
7 manhandle me. . . ." (*Id*. at 50:14-16.) No other officers touched him. (*Id*. at 50:25-51:3.) Once he
8 was handcuffed, Beckum explained that an officer (presumably, Officer Soares) "searched me,
9 pulled my clothes up, went in my pockets, [and went] through my bag." (*Id*. at 49:16-17.) After
10 this, he was initially placed on the hood of a police car, but he was later moved to the shade after he
11 complained about the heat and because his shoulder and his back were hurting. (*Id*. at 49:2-14.)
12 After about 30 to 40 minutes, his handcuffs were removed. (*Id*. at 17:7-11.)

13    Beckum, though, also testified that his left shoulder and back were hurt while he was in
14 handcuffs and later sought medical treatment. (*Id*. at 17:12-18:20.) He provided the name of the
15 doctor he saw, but did not submit any other evidence related to this medical treatment. (*See id*.)

16    Viewing the facts in the light most favorable to Beckum, the Court believes that a triable
17 issue of material fact exists. While Beckum's testimony suggests that the amount of force at issue
18 here may have been minimal and reasonable, he also testified that he was hurting while he was in
19 handcuffs. Beckum's deposition testimony, which was the only evidence cited, leaves open the
20 question as to how much force Officer Soares used during the arrest. And without clear evidence of
21 how much force was used, it is not possible to determine whether it was "objectively reasonable" as
22 a matter of law.[4] Thus, summary judgment shall be denied regarding Beckum's excessive force
23 claim.

---

[4] *See Burns v. City of Redwood City*, No. C 08-2995 RS, 2010 WL 3340552, at *8 (N.D. Cal. Aug. 25, 2010) ("Because an excessive force claim 'nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom,' the Ninth Circuit has also instructed that summary judgment in excessive force cases should be granted sparingly.") (citing *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)).

C. Failure to *Mirandize* Beckum

Beckum also claims that his constitutional rights were violated because he was not given *Miranda* warnings upon his arrest. However, "a violation of the constitutional *right* against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case." *Chavez v. Martinez*, 538 U.S. 760, 770 (2003) (officer's failure to read *Miranda* warnings to defendant did not violate defendant's constitutional rights and could not be grounds for a § 1983 action) (emphasis in original). Here, Beckum was never so compelled, and, in fact, the charges against him for violating California Penal Code § 148(a)(1) were later dismissed. Beckum also presents no evidence in this regard and did not even address the matter in his opposition. As such, summary judgment shall be granted as to this claim.

D. Qualified Immunity

Defendants assert that even if Beckum suffered constitutional violations based on his false imprisonment and excessive force claims, they are entitled to qualified immunity. Under the doctrine of qualified immunity, even if a constitutional violation occurred, governmental officials are immune if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

Under *Saucier v. Katz*, 533 U.S. 194 (2001), the court must undertake a two-part inquiry to determine whether qualified immunity applies.[5] The court must ask whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 201. This part of the inquiry "mirrors the substantive summary judgment decision on the merits." *Sorrels v. McKee,* 290 F.3d 965, 969 (9th Cir. 2002). "If no constitutional right would have been violated were the allegations established," then the officer is entitled to qualified immunity. *Saucier*, 533 U.S. at 201. But if there appears to have been a constitutional violation, the court must determine whether the constitutional right in question was

---

[5] The order in which these questions are addressed is left to the court's discretion. *Pearson v. Callahan,* 555 U.S. ----, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009) ("[W]hile the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.") That said, the Supreme Court also recognized that the order as provided in *Saucier* "is often beneficial." *Id.*

7

"clearly established." *Id*. If the right is not clearly established, then the officer is entitled to qualified immunity.

As noted above, the Court believes that material issues of fact exist regarding Beckum's false imprisonment and excessive force claims, so for purposes of immunity, Beckum's constitutional rights may have been violated, and the second part of the inquiry must be conducted.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Walker v. Gomez*, 370 F.3d 969, 978 (9th Cir. 2004). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

"Where a plaintiff asserts a Fourth Amendment violation based on the absence of probable cause, the relevant inquiry with respect to the 'clearly established' prong of the qualified immunity analysis is 'whether a reasonable officer could have believed that probable cause existed to arrest the plaintiff.'" *Loharsingh v. City and County of San Francisco*, 696 F.Supp.2d 1080, 1107 (N.D. Cal. 2010) (quoting *Franklin v. Fox,* 312 F.3d 423, 438 (9th Cir. 2002)) (internal quotation marks and citation omitted).

With respect to Beckum's false imprisonment claim, the Fourth Amendment right to be free from seizure without reasonable suspicion and arrest without probable cause is clearly established. *See United States v. Sokolow,* 490 U.S. 1, 7 (1989). Moreover, the Ninth Circuit has previously explained that verbal protests alone do not establish probable cause to arrest an individual for a violation of California Penal Code § 148(a)(1). *See Mackinney v. Nielsen,* 69 F.3d 1002, 1007 (9th Cir. 1995) ("Officer Nielsen should have known that Mackinney's verbal protests could not support an arrest under [California Penal Code] § 148. It was unreasonable of him to think otherwise."). It is also clear than an individual does not violate § 148(a)(1) merely by responding to an officer more slowly than an officer would prefer. *Loharsingh v. City and County of San Francisco*, 696

1   F.Supp.2d 1080, 1100 (N.D. Cal. 2010) ("Courts have noted . . . that 'it surely cannot be supposed

2   that Penal Code section 148 criminalizes a person's failure to respond with alacrity to police

3   orders.'") (quoting *In re Muhammed C.*, 95 Cal.App.4th 1325, 1330 (2002)) (internal quotation

4   marks and citation omitted).

5         Here, Beckum answered Officer Soares's question by stating that no one had "run" past him.

6   Based on the evidence before the Court, Beckum's answer to Officer Soares could be considered a

7   "verbal protest," but it is probably more accurate to say that his answer not what Officer Soares

8   wanted to hear.  As such, qualified immunity shall be denied with respect to Beckum's false

9   imprisonment claim.

10         With respect to Beckum's excessive force claim, it is clearly established that an individual

11   has a right to be free from excessive force and that "force is only justified when there is a need for

12   force."  *See Blankenhorn v. City of Orange,* 485 F.3d 463, 481 (9th Cir. 2007).  Here, given the

13   sparse factual record and as explained above, it is too difficult to make the determination of whether

14   Officer Soares's "grabbing" of Beckum was reasonable or not.  *See Santos v. Gates*, 287 F.3d 846,

15   855 n.12 (9th Cir. 2002) (noting that it is "premature" to decide whether qualified immunity

16   shielded officers from a excessive force claims "because whether the officers may be said to have

17   made a 'reasonable mistake' of fact or law [] may depend on the jury's resolution of disputed facts

18   and the inferences it draws therefrom"; "Until the jury makes those decisions, we cannot know, for

19   example, how much force was used, and, thus, whether a reasonable officer could have mistakenly

20   believed that the use of that degree of force was lawful."); *Burns v. City of Redwood City*, No. C 08-

21   2995 RS, 2010 WL 3340552, at *12 (N.D. Cal. Aug. 25, 2010) ("Just as the question of whether a

22   constitutional violation occurred here turns entirely on whose facts to accept, so too does the

23   question of immunity.  More simply, if [plaintiff] behaved as the officers contend, their mistake of

24   fact might be objectively reasonable.  If he did not, the mistake may be deemed unreasonable.").

25   Because it is unclear how much force was actually used against Beckum, qualified immunity shall

26   be denied with respect to Beckum's excessive force claim as well.

27

28

E.  Liability of City of East Palo Alto

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). However, a city or county may not be held vicariously liable for the unconstitutional acts of its employees under the theory of *respondeat superior*. *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691; *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995). To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation. *See Plumeau v. School Dist. #40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

Liability based on a municipal policy may be satisfied in one of three ways: (1) by alleging and showing that a city or county employee committed the alleged constitutional violation under a formal governmental policy or longstanding practice or custom that is the customary operating procedure of the local government entity; (2) by establishing that the individual who committed the constitutional tort was an official with final policymaking authority, and that the challenged action itself was an act of official governmental policy which was the result of a deliberate choice made from among various alternatives; or (3) by proving that an official with final policymaking authority either delegated policymaking authority to a subordinate or ratified a subordinate's unconstitutional decision or action and the basis for it. *See Fuller*, 47 F.3d at 1534; *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

Here, Beckum's *Monell* liability claim is based on sergeants and/or supervisors being present at the scene, and thereby ratifiying Officer Soares's unconstitutional arrest of Beckum. Even after reviewing the evidence in the light most favorable to Beckum, he has failed to raise a genuine issue of material fact. In his opposition, Beckum states that the City of East Palo Alto "maintains an informal policy regarding this unconstitutional activity in the high crime[ and] high drug areas within the City," apparently basing this claim on the facts that "five or six officers and several

10

supervisors [were] present overseeing the raid" and "a sergeant was present" in the barbershop. (Opp'n at 5.) Thus, Beckum argues that "[t]he supervisors were fully aware of the arrest of [Beckum]," and "two sergeants were present when [Beckum] was being manhandled by Officer Soares and did not intervene." (*Id*. at 6.) Indeed, Beckum stated in his deposition that a couple of sergeants were present at the scene, one of whom was with Officer Soares at some point. (Beckum Depo. 36:24-25; 40:25-41:11; 43:16-17.)

Beckum has presented no evidence of any policy that would give rise to municipal liability under § 1983. While a single, ratifying decision by a municipal policymaker may in rare instances be sufficient for *Monell* liability, there must be evidence of a "conscious, affirmative choice." *Gillette*, 979 F.2d at 1347. "Municipal liability under section 1983 attaches only where 'a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Gillette*, 979 F.2d at 1347 (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483-84 (1986)). Moreover, in order for liability to attach based on the delegation of policy-making authority, a policymaker must "approve a subordinate's decision *and the basis for it* before the policymaker will be deemed to have ratified the subordinate's discretionary decision." *Gillette*, 979 F.2d at 1348 (citing *Bouman v. Block,* 940 F.2d 1211, 1231 (9th Cir. 1991)) (emphasis in original); *see also City of St. Louis v. Praprotnik,* 485 U.S. 112, 126 (1988).

Beckum has produced no evidence of affirmative or deliberate conduct by any sergeants and/or supervisors that may be said to have ratified Officer Soares's decision to arrest Beckum. He merely asserts that because the sergeants and/or supervisors were at the scene, they ratified Officer Soares's conduct. Accordingly, summary judgment shall be granted as to Beckum's claims against the City of East Palo Alto.

F. <u>Liability of Police Chief Davis</u>

Beckum claims that Police Chief Davis is also liable under § 1983. Under § 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of *respondeat superior*. "When the named defendant holds a supervising position, the causal link between the defendant and the claimed constitutional violation must be specifically established."

11

*Wilson v. Woodford*, No. 1:05-cv-00560-OWW-SMS (PC), 2009 WL 839921, at *5 (E.D. Cal. Mar. 30, 2009) (citing *Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir.* 1979); *Mosher v. Saalfeld,* 589 F.2d 438, 441 (9th Cir. 1978)).  To do so, Beckum must demonstrate that Police Chief Davis either: (1) personally participated in the alleged deprivation of Beckum's constitutional rights; (2) knew of the violations and failed to act to prevent them; (3) or "implement[ed] a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989).

Beckum presents no evidence whatsoever as to Chief Davis.  There is no evidence that Police Chief Davis personally participated in or knew about Beckum's arrest or that he implemented any policy that was the "moving force" behind the alleged constitutional violations.  Indeed, Beckum does not even address Chief Davis's liability in his opposition.  Accordingly, summary judgment shall be granted as to Beckum's claims against Police Chief Davis.

### G. State Law Claims

#### 1. False Arrest

Beckum claims that Officer Soares is liable for false arrest under California state law. Defendants argue that they are immune under California Penal Code § 847.  This section protects police officers from civil liability for false arrest or imprisonment arising out of an arrest if the arrest is lawful or the officer had reasonable cause to believe it was lawful.  CAL. PENAL CODE § 847(b). However, "[t]he existence of probable cause is necessary but not by itself sufficient to establish an arrest's lawfulness." *George v. City of Long Beach*, 973 F.2d 706, 710 (9th Cir. 1992).  Because a reasonable jury could find, based on Beckum's version of the facts, that probable cause did not exist for his arrest, this section does not provide immunity for Officer Soares at the summary judgment stage.  Accordingly, summary judgment shall be denied as to this claim.

#### 2. Battery

Beckum also claims that Officer Soares battered him in violation of California state law.  A *prima facie* case for battery during arrest is established under California law if the plaintiff proves that an officer used unreasonable force against him or her.  *See* CAL. PENAL CODE § 835a; *Edson v.*

*City of Anaheim,* 63 Cal.App.4th 1269, 1273 (Cal. Ct. App. 1998).  As explained above, because a reasonable jury could find, based on Beckum's version of the facts, that Officer Soares used unreasonable force when arresting Beckum, summary judgment shall be denied as to this claim.

3. <u>Negligence</u>

Beckum also claims that the City of East Palo Alto and Chief Davis breached their duty of care to him by negligently hiring, training, and supervising its police officers.  No evidence supports these claims.  Nothing in Beckum's deposition testimony supports them.  Nor did Beckum address them in his opposition.  Summary judgment shall be granted as to these claims.

4. <u>Intentional Infliction of Emotion Distress</u>

Beckum also claims that he suffered severe emotional distress as a result of his arrest, yet he provides no evidence in this regard.  Even his deposition testimony, in which he mentions that he received medical treatment for his back pain, does not suggest any emotional harm.  (*See* Beckum Depo. 18:6-18.)  Thus, summary judgment shall be granted with respect to Beckum's intentional infliction of emotional distress claim.

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Defendants' motion for summary judgment is DENIED with respect to Beckum's false imprisonment and excessive force claims under federal law, his false arrest and battery claims under California law, and Defendants' claims of qualified immunity;

2. Defendants' motion for summary judgment in GRANTED with respect to Beckum's claim relating to any officer's failure to provide *Miranda* warnings, his claims against the City of East Palo Alto and Police Chief Davis, and his claims of negligence and emotional infliction of emotional distress under California law.

Dated: September 8, 2010

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C09-03301 HRL Notice will be electronically mailed to:**

David Walter Washington      dwlaw16@aol.com
Jeffrey Michael Vucinich      jvucinich@clappmoroney.com, achang@clappmoroney.com, cgomez@clappmoroney.com, pco@clappmoroney.com
Patrick Reyes Co      pco@clappmoroney.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**